Good morning. Good morning. May it please the court. Matt McCrary on behalf of the plaintiff in this case and I would like to reserve five minutes of my time for rebuttal. All right. At bottom, the preemption question in this case is very straightforward. Are the requirements of plaintiff's state law claims identical to the requirements of federal regulations for toothpaste products? To determine that issue, it's essential to evaluate just what are the requirements of federal law. Here, that federal law being the anti-caries monograph. It has two main requirements. The first is that the product must state in the indications for use section of the label aids in the prevention of cavities, decay, or caries. So assume like two states had, you had to say Ohio and California. I have no idea whether Ohio, but they have a, they both ban non-truthful or misleading advertising. They both only allow truthful or non-misleading advertising. And you were, and you were able to go forward and in California, they were to find that this exact ad is non-truthful, you know, a jury say or something or found that it was, it met California standard or failed California standard. However, in the other state, the other state reached, a jury reached the opposite conclusion or a court did. Yeah. So you're following my hypothetical? I follow your hypothetical, correct. So, so, I mean, do you agree that that is a possibility? Well, your honor, that's always a possibility. I need to know that before we can continue. So, so what you have here still is the same federal standard that's being applied by two different courts. Let me just add, you agree that that could happen, right? Like, okay, so if that happened, and I guess the question I have is if the test is to whether or not the state has the same standard, right, has the identical, not just the same, identical, it's pretty strong language, and two states could reach, like, literally the opposite conclusion. How can we know, like, beforehand that it's an identical standard? It seems to me that, you know, we would know afterwards that they're not, one of those is not an identical standard. And we, we would know if the FDA ever weighed in and said, no, this is fine, which it could do, right, like it did with the mouthwash. It could, and so it's hard, I understand your view is that's identical, but doesn't that kind of prove that we can't know that it's identical? No, your honor, it doesn't, and the Supreme Court actually discussed this in a case I don't think that we cited in our briefing. It's called Enri Palm Wonderful versus Coca-Cola, and it talks about how different states in, can apply the same federal standard. It's still the same uniform national standard, but differing juries in different states may still come to, to different conclusions. Because it's not, it's not, I understand that, like, in theory, I mean, we have law that's different than the, than other circuits on federal standards. So I, you know, that, that, that variation is inherent. That's what the, but this is a little different because it's preempted, unless there's a, there's a savings clause from preemption, if the state has the identical standard. And I understand your argument is it is identical standard because you can't have misleading statements under the federal and you can't have misleading, but the problem, but that kind of ignores the fact that the devil's in the details in a sense of like, if a state determined through a jury that it was misleading and another state determined it wasn't, then one of those would have to be not identical. Well, Your Honor, I would, I would actually look at it slightly differently too. Let me, let me see if I can conceptualize this in a way that it's, that's helpful is that that's sort of mixing the two questions, right? That's the preemption question versus the substantive. Is this misleading question? The preemption question just looks to, is the state law requirement the same as the federal law requirement, right? So we have the federal law requirement that says you can't have misleading anti-cavity claims on your toothpaste. California says you can't have misleading anti-cavity claims on your toothpaste and Ohio says you don't think how that standard gets applied matters at all for the preemption, not for preemption, Your Honor. Correct. Then be that, because whether or not it is actually misleading, is it what the preemption is concerned with? Let me push back on that a little bit. Let me ask you. So if the FDA came out and said this particular, this particular product's label is not misleading under the federal standard, then, then would a state, then would we have to say, well, we don't know whether that's identical. We have to let this case go through. And if a jury finds that it's, yeah, we wouldn't do that. Right. If the FDA came out with a regulation that said you can make enamel restoration claims, then any claim that suggested that that was misleading would be preempted. Absolutely. 100%. What if they like literally sent out a letter to these guys and said, thumbs up. Well, then, then we get into the question of deferring to agency guidance. That's not, you know, that's not official published guidance. Now, if they got into an enforcement action and that enforcement action then went through the courts and it was upheld, that, that could be different, Your Honor. But now we're getting into the question of like Kaiser versus Wilkie. And how much do you defer to, to agency? The point I'm trying to make is I just, I don't know how we can know this is identical. How we can, I mean, your point is it's identical because they're both misleading, but I don't know how we can know that it's identical. Well, Your Honor, in this circumstance, the FDA has determined, let's look at it this way. The FDA has said, look, here's a claim that's not misleading. It's truthful. It's aids in the prevention of cavities, tooth decay, or caries. You can make other cavity prevention claims. We're not sure what of those cavity prevention claims are misleading or not. Instead, we're going to say whatever other cavity prevention claims you can make, they have to be truthful and non misleading. And by the way, they're still subject to section 502 of the FDCA, which says the general misbranding provision, which says labeling can't be false or misleading at any particular, right? So this is essentially the FDA saying, we've looked at this. We know aids in the prevention of cavities is a truthful and non misleading claim. And the rest, we're not going to make a specific list of what is approved and what is not approved. And this court in the, the Reed case, Reed versus Johnson and Johnson case, which we've cited in our briefs has said that courts are competent to determine. When I start talking, thank you. Because I understand where you're going. So I want to, I want to, I'm trying to have a dialogue with you about this. So the problem is, is that the, the, the practical problem I'm concerned about is that under your, your approach to this, you would have state jury say, or state courts deciding whether something was ultimately misleading. And they would, and the only way that would be identical is if that was also what the federal statute barred. And so you're, you basically have, even though you're not deciding the federal standard technically, because you have a jury deciding the state law claim, you are a sent you by, by logic, you must be decided. You have these state juries applying state standards that are actually deciding a federal standard. But, and I, does it, and that seems to go in the face a little bit of, of the point of preemption. Well, your honor, and that is again, discussed in the cook and the palm, wonderful versus Coca-Cola case, right? In our dual federal and state system, even when you're applying a national standard, you're going to have some sort of variability, but the question is, is the standard the same? And the standard that's being applied is going to be the same outcome in any given case. Let me pivot just slightly. One of my concerns is really the procedural posture of this case. We're at the pleading stage. Given these types of claims could preemption be decided at the summary judgment stage? In other words, at this stage, one of the focus is really on reasonable consumer confusion, but even if you survive a motion to dismiss, because at this stage, the preemption claim may be premature. That doesn't mean that the case then goes to trial, right? Correct. I want to get, get back into what I would, how I would separate that your honor is that the preemption question can be decided right now. It's the same standard. And then the question becomes applying the identical federal and state standard of misleading reasonable consumers. Does the claim succeed or fail on the merits that that could certainly be decided at summary judgment. There wouldn't be a preemption determination. That would be your claim fails as a matter of identical and parallel state and federal regulation. Not that it's so the claim doesn't become preempted. It just fails as a matter of federal and state law.  But to get back to the first issue that I just, I would like to wrap up with, and then I'm happy to reserve the rest of my time unless the court has more specific questions is that when you have a standard like this, like the false or misleading in any particular or truthful and non misleading claims, that standard is necessarily going to have some variability in the way that it's applied, but the standard is the same, even if the outcome may change. And since the standard is the same, the claim is not preempted. And this court in the Reed versus Johnson and Johnson case was looking at a regulation that itself said you can make quantitative nutrient content claims so long as they're not false or misleading in any way. And the court held that that claim was not preempted. A state claim that is misleading was not preempted. And it also held, this court also held courts are competent to determine whether something is misleading to reasonable consumers without needing guidance from a federal agency. So we don't need the FDA to say affirmatively, this is false or it's, it is misleading. Courts can, courts can do that. Now I'd like to reserve the rest of my time for rebuttal. Thank you. All right. Good morning. Your honors may please to court Jay Lefkowitz for Halion. And I want to begin with judge Van Dyke's question because I think it illustrates why there has to be preemption here. The FDA has reviewed the evidence, approved an indication and didn't just approve it, but also said companies can use alternative language. And the FDA can obviously with its plenary power under section 337 of the FDCA determine whether the language is misleading. And it did that, for example, with sunscreens, where it said in the monograph, you can't use the word sunblock because that would be misleading, but you can't have 50 different states who are applying vague, you know, what does it mean to be misleading as opposed to fixed parallel claims? And that's, I think the core issue here. And in fact, the sentence that grants this additional authority is an important sentence. If that sentence didn't exist, the monograph would simply say, you can use, you must use these words to describe the indication, prevents cavities, prevents carries. And that would be it. And even if there wasn't that additional grant of authority, we would still be able to use additional language and they would be subject to the general misbranding provision, which as the second circuit made clear in creature can't be used to have a state law go after compliance with a specific regulation. The only reason that additional sentence is there and isn't surplusage is because the FDA decided within a regulation that is intended to have preemptive effect to direct companies that they now have a flexible authority to describe the language. And here we know from the backdrop from the NPRM. So the upshot of, of all this, if you kind of follow the logic, cause you heard my be discussing with your colleague on the other side, the upshot is because the FDA says you have to say this and you can say this as long as it's not misleading. You can say something else and they leave you to remove that. Then what this really comes down to is whether or not when you're acting under the secondary part of that, that gives you some flexibility, whether or not something is preempted, a state law action like the one they're trying to bring here is preempted until the FDA says, yeah, that's misleading. Cause I assume that if the FDA said this statement that you thought fell in the second part is, is actually misleading. As soon as the FDA said that was misleading, then you could bring on a follow on state law claim because that wouldn't be preempted, right? Cause it would be identical, correct. And the FDA could bring its own action at that point. And, and, uh, and if the FDA said it's not misleading, then I think it would be, it would be preempted. But here this is in the middle where the FDA just hasn't spoken to it. And I think your position is the FDA silence on something means it is preempted until they say it's misleading. And their position is that the FDA silence on it means until it says it's not misleading, it's preempted. And if it's misleading, then the FDA will have told us that it meets the federal standard. Um, and you could tell from my question, my instinct is that that seems, it seems like that could lead to some bad effects because you could end up with the contrary, contrary things in different States. But, but why is that position wrong that their position? I think there are two different answers to that, if I may, your honor, cause I think this strikes at the heart of the, the whole case. And I want to first look at what the second circuit did in creature, which is a fairly parallel situation. In that case, there was a requirement to describe the net weight and the company described the net weight, but it was clearly done in a way that the plaintiff said is misleading. They said there's two ounces, but you could only access an ounce because of the way you had to squeeze the tube. And the plaintiffs challenged it and said, even if you're within the scope of the regulation, there's this misbranding provision. And in fact, not only is there a broad misbranding, a general misbranding provision, but there's even a specific requirement in the statute that with respect to fill, you can't fill things in a misleading way and label them in a misleading way. And what the second circuit says is no, no, no, no, no, the agency has regulated this. You have done what the agency has said you may do. You can't bring a collateral attack using the misbranding statute because that would essentially be allowing different States to regulate and impose new limitations here. We're not talking about a situation where the language that's being used, for example, says it cures cancer. I think we would all agree that if the language says it cures cancer, why is that? Why is that cures cancer example of the extreme example? What, why does that not a problem for your position? I think, I think, look, there are clearly courts, including courts within this circuit that have said that even that would be preempted. I think that the better, more kind of accurate test to be faithful to what Congress was doing here is to look at where there is a reading of the language that describes the indication, because the very specific grant of authority says you have to describe the indication. You don't go to the misbranding statute for the reason that you pointed out because Arizona could have one interpretation and Ohio could have another. And then you'd have problem council. And I'll ask you the same question that I asked your opposing friend on the other side is really the procedural posture of this case and indication of aid or prevention in cavity. It's clearly permissible, but I don't know whether rebuild, restore repair really fits within that indication. And I don't know that a reasonable consumer would know that. So if we didn't know, what do we do with that? So at this stage, thank you, your honor. I think because there is a proof, a statute that provides for express preemption, the preemption question is a gateway issue. It's a threshold issue. And the courts have said, and the Supreme court in Albrecht said, that judges are uniquely qualified to make those legal decisions. If there were no preemption regulation here at all, and this were just a simple state common law, false advertising case, then you'd be looking at it through a different prism. But when there is a statute on point or a regulation on point that says it is preempted. If you are doing something that is within the scope of the regulation that provides for preemption, then judges are the ones who have to make that threshold determination. And here, I think you can look as... Drawing on what? What? Drawing on what? Drawing. OK, so... On our own personal experiences disregarding what... I mean, I'd like to see in this instance, for example, let's say there's no preemption framework issue here. Usually it goes through summary judgment. You get consumer surveys and the like. You may... They may survive summary judgment. They may not. So in this case, the factual inquiry of whether rebuild, restore, repair, whether that's cavity prevention or not. It's kind of the same factual inquiry that underlies the preemption analysis. But what you're saying, well, judges are supposed to make that call. Do we then draw on our collective experiences in deciding whether that fits within the permissible indication in this case? So the two part answer. The first part is, yes, because it's preemption, you could always in every preemption, every failure to warn case, you could say, well, let's not decide it. Let's let the jury decide whether there should have been an additional warning or not. The whole point of preemption is it's a threshold issue. Courts actually have to make that judgment. Now, the question you asked is, how do you make it? Well, again, Albrecht says that judges are better equipped than juries to understand and interpret agency decisions. Here we have an agency statement in the monograph as to what the indication is, prevents cavities. Then we have the agency's statements of its scientific rationale for that in the NPRM, where it describes how fluoride works to remineralize enamel, to harden enamel, to restore enamel, to get into the enamel and make it stronger. And I think at that point, the court has to say, is this a reading? Can you read those words that are on the label and say this is within the framework of what the FDA has regulated? Not whether there's some conceivable other implication, because the minute you find that it is within the protected scope, a state regulation or a state law or a state jury decision that you can't say that is prohibiting something that the agency has authorized in a preemption statute. And so I think it is a different analysis. The difficulty I have with that approach is let's say we three get together and we talk about our toothbrushing habits and we really dig deep and we end up determining in a 2-3 decision that these words fall within the scope of the monograph, right? And then Judge Huey goes the other way and we all laugh at him. And then one week later, the FTC comes out and says what he said. Right. And then we so that's the problem. It seems weird for us to I understand your position, but it seems weird. I guess that's why I was I was just saying, does the fact that we could that if we adopted the plaintiff's position in this, we could end up in this, it seems like illogical situation where where we literally have one state saying something that's that is not reconcilable with another state is saying. And yet somehow we've we've somehow logically saying that both of those are are identical to what the FTC, which which can't be true. That can't be. And that is precisely why the plaintiff's rationale here would lead to this kind of health. But wouldn't our analysis, if that's the case, would just to be to ask ourself instead of trying to put ourself in the shoes of the FDA, I say FTC earlier, but FDA, wouldn't our analysis just be more of is this something that could be within the scope of this monograph? If so, is preempted unless and until the FDA tells us that it's misleading. Yes. And and in fact, we have some indications of that as well from, again, not legally binding documents, but informative documents. The the warning, the warning letters that the judge referred to in the plaintiffs referred to in the briefing describe companies that have been using various types of fluorides and have different types of warnings. And there are you know, there are letters. And of course, the companies use these phrases and the FDA has not taken action yet. Obviously, in your hypothetical, if tomorrow after you decide the case, the FDA makes a judgment, well, then they will bring an enforcement action. And this case will go away because Halion will be subject to an enforcement action. But for the purposes of the gateway question of preemption, the FDA told companies not just that you can say these magic words, but you also can use other words describing it. They were well aware of all of these phrases that the companies were using. And the plaintiff's position is, yeah, you they allow you to do that. But that but none of that is preempted. Essentially, that is their position, unless and until the FDA comes out and specifically blesses that additionally. The consequence of the plaintiffs and your position is that all of it would be preempted, I think that's kind of. Yes, because the consequence of the plaintiff's position is that second sentence means absolutely nothing. There is never preemption, because no matter what word I use, if I don't use the identical word prevents cavities, if I say it in any other way at all, even though the FDA has authorized me to use other language, they say, well, subject to this misbranding provision, it's a parallel claim in my state and in another state. And now all of a sudden there's no preemption. The whole purpose of that. This is a situation where the FDA decided to provide flexibility to companies. And it's for the FDA to ultimately decide whether a company oversteps. They did that with respect to Sunblock, where they imposed a limitation. And in creature, even though there was clearly a very reasonable claim that that the that the amount of fluid listed on the tube was misleading because you could never squeeze half of the fluid or a quarter of the fluid out. It was deemed to be preempted. The last point I want to make, Your Honor, is if the FDA prohibited the language tomorrow, that would be a new requirement. And it's fine for the FDA to impose new requirements. But plaintiffs are not allowed to impose new requirements or different requirements under state law. So a future FDA enforcement action would be consistent with the court's ruling on preemption. It would be saying federal government can impose new limitations, new requirements, but not a state. If the court has no further questions. I'll rest. Thank you. Thank you. Counsel, can you can you address the, you know, his point that basically under your interpretation, that the second, you know, there's a thing you have to say under the monogram and then there's the flexibility, what they call the flexibility, and that there would be no preemption related to acting under the flexibility. And so then basically the agency is giving you flexibility. But but but subject to policing by the states. And so since which is an agency, I think they would say not policing by the states. Right. Yeah, I'm I'm saying I'm describing your interpretation. Your interpretation would be that this other thing. Yes, obviously, we agree by the courts using the same the same national standard. You can do it in state courts, too, as well. Right. But the same national standard that can't be true. If you end up with Ohio saying this same language is misleading. And you're right. I mean, it's true. If you give manufacturers flexibility to write, I mean, other other this this is an anti cavity toothpaste with sodium fluoride. Right. A lot of manufacturers don't make restore enamel restoration claims. Right. This is a claim that they've decided to make to differentiate their product from other anti cavity products, even though they can't. It's the same active ingredient. It can't do anything that these other toothpastes can't. So you get different interpretations. If if it's the if it's the companies that are essentially regulating themselves in their own claims versus the the states that are doing it through through what is what what they each determine is misleading. So let's say Crest says in normal enamel restoration, that's a misleading claim. We're not going to put that on our products because because we don't want to violate the monograph. And since it's so, I think I'm understanding you, but I just want to make sure that we know where the lines are. So I think, you know, they have a very broad view of the preemption. It is preempting, obviously, the thing that they are required to do. But it's also preempting any basically any action that they can take under the secondary part, unless the FDA comes in and says, no, no, no, that's messy. Like like they did with the mouthwash is your position. I just want to make sure your position, I think, is that any action they take in the discretionary part of it, there is essentially no no preemption. Or am I wrong about is there some way there would be preemption under there or is the preemption does not apply to that? Well, your honor, I think I think, number one, preemption would apply. It's it gets tricky, right? Because what is clear is it has to be a cavity prevention. Give me a circumstance where the preemption would apply. Because when I was reading this, I was saying, well, I think under your position, basically, toothpaste manufacturers can only put the language in the first part, the part that says you have to do this if they want to take to have the safe harbor of preemption, so to speak. They can only use that language. Anything else, they're taking the risk that they get a lawsuit like y'all and which runs in all the the differences between states and the possibility the FDA may, you know, a California jury may hit them with a verdict and they pay. And then two years later, the FDA blesses that language. Right. And I think that then we get into the distinction of what is doing all the work here to limit cases, right? Is it preemption or is it is it the misleading standard? Right. So if somebody said something like helps to fight cavities, how could you argue that that is that is either preemptive? You could say that's just clearly an anti-cavity claim. Or if somebody said, no, that's not an anti-cavity. But if you had a theory, if you had a theory for why that was misleading, would it would that be preempted or would it not be preempted? Again, here, I would say if that gets into the plausibility standard, right, is it plausibly misleading to say that it helps fight cavities? Probably not. Right. And so it's still going to fail at the motion to dismiss stage. And here we have a claim that is that is not helps fight cavities and it's not even helps remineralize teeth. It's rebuilds, restores, repairs enamel. But if your theory doesn't play out at summary judgment, then it falls well within what's permissible. So if it fails, yes, certainly we might not be able to prove that reasonable consumers interpret this as an enamel restoration claim. Maybe reasonable consumers do say, oh, hey, all this is going to do is help me fight cavities, in which case we would lose on the merits of the claim under both. But you would also then be preempted, right? So let's say you lost and the jury said this is not misleading. And well, then it obviously was preempted because it only bans misleading. I think of it more as like subject matter jurisdiction. Right. Let's say you have a set. You allege that there's if it's permissible under the regulations, it's preempted. Right. And so if but it's also permissible, if you could stop. Hold on. It's hard when we talk over each other because I can't hear you and you can't hear me and you're not responding to my concerns directly. So it goes back to what I was discussing with counsel earlier. We're at the motion to dismiss stage. I don't have I don't feel like I have the expertise to figure out whether rebuild and restore constitutes cavity prevention or decay prevention within the indication that's permissible. So you get beyond the motion to dismiss stage at summary judgment if they can provide evidence that eliminates any any really material question of fact, wouldn't the summary judgment ruling be the same as the preemption ruling at that point? The effect would be the same. The case would lose. But I still don't think it's just like if if you allege that you have seventy five thousand dollars in controversy, but ultimately you can't prove damages. It's not that the court lacked jurisdiction. It's that the claim failed on the merits. And I would I would think of it in a similar term. It's not that the claim suddenly becomes preempted at the summary judgment stage. It's that it fails under an identical nonpreemptive state and federal standard. Right. Because it's it's it's not misleading under state law either. It is not prohibited by state law. Both state law and federal law say this claim is fine. So it doesn't become preempted. It just fails. So then the one thing that I'd like to address for the last time is this question of silence. The FDA hasn't said anything about restores, rebuilds or repairs. And this court addressed that circumstance in Astiana. And it said silence does not mean that you have to have that false misleading means a list of specifically prohibited statements. It means false and misleading. And as this court held in Reed, courts are competent to determine that without the guidance from the FDA. Thank you for your time. Are you over time? But just a minute. I want to make sure that everybody gets a chance to have their questions addressed. Thank you. Thank you, Your Honor. The matter is submitted.
judges: NGUYEN, VANDYKE, Huie